IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**KAREN FANN, IN HER OFFICIAL CAPACITY AS PRESIDENT OF THE ARIZONA SENATE; WARREN PETERSEN, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE SENATE JUDICIARY COMMITTEE; THE ARIZONA SENATE, A HOUSE OF THE ARIZONA LEGISLATURE,**
*Petitioners,*

*v.*

**THE HONORABLE MICHAEL KEMP, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,**
*Respondent Judge,*

**AMERICAN OVERSIGHT,**
*Real Party in Interest,*

No. CV-22-0018-PR
Filed August 31, 2022

Petition for Special Action from the Superior Court in Maricopa County
The Honorable Michael Kemp, Judge
No. CV2021-008265
**REVERSED AND REMANDED WITH INSTRUCTIONS**

Opinion of the Court of Appeals, Division One
252 Ariz. 508 (App. 2022)
**VACATED**

COUNSEL:

Kory Langhofer (argued), Thomas Basile, Statecraft PLLC, Phoenix, Attorneys for Karen Fann, Warren Petersen, and Arizona Senate

Keith Beauchamp, Roopali H. Desai, D. Andrew Gaona (argued), Coppersmith Brockelman PLC, Phoenix, Attorneys for American Oversight

David J. Bodney, Craig C. Hoffman, Matthew E. Kelley, Ballard Spahr LLP, Phoenix, Attorneys for Amici Curiae Phoenix Newspapers, Inc. and Kathy Tulumello

JUSTICE LOPEZ authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, JUSTICES BEENE, MONTGOMERY, KING, and PELANDER (RETIRED)* joined.

JUSTICE LOPEZ, Opinion of the Court:

¶1        Today we consider the scope and application of legislative privilege under the Arizona Constitution and the common law. *See* Ariz. Const. art. 4, pt. 2, § 7. Legislative privilege—as set forth in *Gravel v. United States*, 408 U.S. 606 (1972), and *Arizona Independent Redistricting Commission v. Fields*, 206 Ariz. 130 (App. 2003) (the "*Gravel/Fields* framework")—exists to protect the integrity and functioning of the legislature. Thus, although the privilege protects communications that are an integral part of the deliberative and communicative processes relating to proposed legislation, the privilege does not require pending legislation or affirmative evidence of legislative impairment. Instead, the privilege also applies to legislative communications concerning "other matters placed within the jurisdiction of the legislature," *Fields*, 206 Ariz. at 137 ¶ 18; *accord Gravel*, 408 U.S. at 625, provided they are not administrative or political in nature. Finally, we provide substantive and procedural guidance to aid the trial court in evaluating the Arizona Senate's privilege log and determining the discoverability of assertedly privileged documents and communications.

## BACKGROUND

¶2        Following the November 2020 election, Senate President Karen Fann, Senate Judiciary Committee Chairman Warren Petersen, and the Arizona Senate (collectively, the "Senate") contracted with Cyber Ninjas to conduct an audit of the nearly 2.1 million ballots cast in Maricopa County (the "Audit"). The statement of work specified that the Audit would "attempt to validate every area of the voting process to ensure the integrity of the vote," including "auditing the registration and votes cast, the vote

---

* Justice Clint Bolick has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

counts and tallies, the electronic voting system, as well as auditing the reported results." At the conclusion of the Audit, Cyber Ninjas was to draft a report detailing its findings, including any issues with voting tabulation or software, and improperly transmitted result tallies. The report was also to include "[r]ecommendations on how to prevent any detected weaknesses from being a problem in future elections (if applicable)." Cyber Ninjas delivered the report to the Senate in September 2021. The Senate subsequently released the report to the public and conducted a public hearing in the Senate chamber outlining the report's findings and conclusions.

¶3        American Oversight, a nonprofit organization that advocates for government transparency, submitted requests to the Senate and Cyber Ninjas to produce public records relating to the Audit. Upon the Senate's refusal to produce most of the requested records, American Oversight filed a complaint under Arizona's public records law, A.R.S. § 39-121, to compel disclosure of the documents, including those in the possession or custody of Cyber Ninjas and its subcontractors. The Senate moved to dismiss the complaint, asserting among other things that legislative immunity barred the suit. The trial court rejected the Senate's immunity claim and ordered it to immediately disclose all documents and communications concerning the Audit's planning and execution and any documents with a substantial nexus to the Audit. The Senate sought special action relief in the court of appeals, which accepted jurisdiction but denied relief, reasoning that the legislature does not have a blanket exemption from disclosure under the public records law. *Fann v. Kemp ex rel. Cnty. of Maricopa* (*Fann I*), No. 1 CA-SA 21-0141, 2021 WL 3674157, at *1 ¶ 1, *3 ¶ 16 (Ariz. App. Aug. 19, 2021) (mem. decision).

¶4        After the court of appeals held that the requested communications were public records subject to disclosure requests, the Senate subsequently disclosed about 22,000 records. However, the Senate also submitted to the trial court a privilege log listing 422 withheld and 272 redacted communications, claiming these communications were covered by legislative privilege, and withheld another 402 records based, in part, on the same grounds. The Senate's privilege log indicated that some of the communications were withheld because those e-mails contained "internal legislative discussions regarding [the] [A]udit" and legislative proposals and some text messages referred to communications regarding its legislative investigation, the Audit process, and legislative proposals.

3

American Oversight moved to compel the Senate to produce the withheld records.

¶5      The trial court held in abeyance a decision on whether an in camera inspection was necessary, declined to address the sufficiency of the Senate's privilege log, and rejected the Senate's legislative privilege claim. The court concluded that, even if legislative privilege applied, the Senate effectively waived the privilege by releasing public statements about the Audit, publishing Cyber Ninja's comprehensive report, and conducting a public hearing.  The Senate sought special action relief in the court of appeals, which held that the Senate did not meet its burden of showing that all communications in the privilege log were protected by legislative privilege, but that the trial court erred in finding a global waiver of the privilege. *Fann v. Kemp ex rel. Cnty. of Maricopa* (*Fann II*), 252 Ariz. 508, 511 ¶ 2 (App. 2022).  The court of appeals ordered the Senate to disclose all records listed in the privilege log that did not fall within the court's interpretation of the *Gravel/Fields* framework.  When the Senate asserted that the privilege shielded certain communications from discovery, the court directed the Senate to submit to an in camera inspection by the trial court to determine whether the records were privileged or must be disclosed under the public records law.  The Senate then sought this Court's review.

¶6      We granted review to consider the scope and application of legislative privilege, a recurring issue of statewide importance.  We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶7      The court of appeals held that the Senate failed to meet its burden of showing that the legislative privilege protected its Audit communications from disclosure because (1) it did not demonstrate a connection between the Audit and proposed or pending legislation, *Fann II*, 252 Ariz. at 517 ¶ 30; (2) the Audit was more administrative or political than legislative in nature, *id.* at 516–17 ¶¶ 26–27; and (3) the Senate failed to demonstrate impairment of the legislative process, *id.* at 518 ¶ 32.  We disagree and, after setting forth the general principles of privileges and the contours of legislative privilege, we address, in turn, each of the court of appeals' conclusions and the substantive and procedural issues concerning the Senate's privilege log.

**I.**

**A.**

**¶8** The party asserting a privilege has the burden of proving each of its elements. *Steiger v. Superior Court*, 112 Ariz. 1, 3 (1975). The existence of an evidentiary privilege is a question of law which we review de novo, *Fields*, 206 Ariz. at 136 ¶ 14 (citing *Twin City Fire Ins. v. Burke*, 204 Ariz. 251, 254 ¶ 10 (2003)), and we also review de novo whether a privilege applies, *see State ex rel. Adel v. Adleman*, 252 Ariz. 356, 360 ¶ 10 (2022).

**¶9** It is a long-standing principle that "'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege." *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)); *see also* § 39-121 (Arizona's public records law)[1]; A.R.S. § 38-431.01 (Arizona's open meeting law). Although the various privileges "are designed to protect weighty and legitimate competing interests," *United States v. Nixon*, 418 U.S. 683, 709 (1974), we narrowly construe privileges because they are "in derogation of the search for truth," *id.* at 710; *see also R.S. v. Thompson ex rel. Cnty. of Maricopa*, 251 Ariz. 111, 117 ¶ 16 (2021) (recognizing the need for full disclosure of all facts to maintain the integrity of the judiciary despite having no general constitutional right to discovery); *Indus. Comm'n v. Superior Court*, 122 Ariz. 374, 375 (1979) (noting that "statutes creating evidentiary privileges are [to be] strictly construed"). These broad principles underlie our analysis of legislative privilege.

**B.**

---

[1] The core purpose of the public records law is "to allow the public access to official records and other government information so that the public may monitor the performance of government officials and their employees." *Phx. New Times, L.L.C. v. Arpaio*, 217 Ariz. 533, 541 ¶ 27 (App. 2008) (quoting *Phx. Newspapers, Inc. v. Keegan*, 201 Ariz. 344, 351 ¶ 33 (App. 2001)). "To justify withholding public documents, the State's interest in non-disclosure must 'outweigh the general policy of open access'" as stated in the public records law. *Phx. Newspapers, Inc.*, 201 Ariz. at 349 ¶ 19 (quoting *Carlson v. Pima Cnty.*, 141 Ariz. 487, 491 (1984)).

**¶10**        Legislative privilege is a constitutional privilege that emanates from legislative immunity. *Fields*, 206 Ariz. at 136 ¶ 15. Legislative immunity, in turn, arises from the common law and is embodied in the Speech or Debate Clause of the United States Constitution and the notion of the separation of powers. *Id.*; *see* U.S. Const. art. 1, § 6, cl. 1 ("[Senators and Representatives] shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses[;] . . . and for any Speech or Debate in either House, they shall not be questioned in any other Place."). The federal Speech or Debate Clause allows legislators the freedom of speech, debate, and deliberation without fear of intimidation or threats from the executive branch and protects members of Congress from prosecutions arising from the legislative process. *Gravel*, 408 U.S. at 616. When members of Congress act within their "sphere of legitimate legislative activity," the Speech or Debate Clause is an absolute bar to criminal prosecution or civil liability. *Id.* at 624 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).

**¶11**        The Supreme Court has recognized that common law legislative immunity, akin to that embodied in the Speech or Debate Clause, extends to state legislators while acting in a legislative capacity. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). This immunity, however, is limited because it arises from the nature and purpose of the legislator's core activities:

> Legislative acts are not all-encompassing. The heart of the [Speech or Debate] Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an *integral part of the deliberative and communicative processes* by which Members participate in committee and House proceedings *with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House*. As the Court of Appeals put it, the courts have extended the privilege to matters beyond pure speech or debate in either House, but "only when necessary to prevent indirect impairment of such deliberations."

*Gravel*, 408 U.S. at 625 (emphasis added) (citation omitted).

6

**¶12**        Our courts have recognized and adopted *Gravel*'s articulation of the scope of legislative privilege. *See, e.g.*, *Fields*, 206 Ariz. at 136 ¶ 15, 137 ¶ 18. Thus, legislative privilege extends beyond pure speech or debate in the legislature provided the communication concerns "'an integral part of the deliberative and communicative processes' relating to proposed legislation *or other matters placed within the jurisdiction of the legislature*, and 'when necessary to prevent indirect impairment of such deliberations.'" *Id.* at 137 ¶ 18 (internal citation omitted) (emphasis added) (quoting *Gravel*, 408 U.S. at 625). Consequently, legislative privilege also serves as a testimonial and evidentiary privilege. *Id.* ¶ 17. A legislator engaged in legitimate legislative activities cannot be compelled to testify about those activities or the motives underlying legislative decisions. *Id.*; *Steiger*, 112 Ariz. at 3. This legislative privilege enables legislators to execute the essential functions of the office without fear of prosecution and protects both oral testimony and document production. *Fields*, 206 Ariz. at 137 ¶ 17, 140–41 ¶ 32. If legislative immunity or privilege applies to either testimony or documents, it is absolute. *See Mesnard v. Campagnolo ex rel. Cnty. of Maricopa*, 251 Ariz. 244, 250 ¶ 21 (2021); *see also* Restatement (Second) of Torts § 590 (Am. L. Inst. 1977) (noting that legislators are "absolutely privileged to publish defamatory matter concerning another in the performance of [their] legislative functions").

**¶13**        But not every legislator's act "'in any way related to the legislative process' is afforded absolute immunity." *Mesnard*, 251 Ariz. at 249 ¶ 14 (quoting *Steiger*, 112 Ariz. at 4). Legislative privilege "is not intended to protect legislators' individual interests, 'but to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal.'" *Fields*, 206 Ariz. at 137 ¶ 17 (quoting *Coffin v. Coffin*, 4 Mass. 1, 27 (1808)). Like legislative immunity, legislative privilege only protects the disclosure of documents concerning purely legislative acts and does not cover communications solely about political or administrative acts. *See Mesnard*, 251 Ariz. at 249 ¶ 16; *Fields*, 206 Ariz. at 140–41 ¶ 32.

**¶14**        Legislative functions entitled to privilege include preparing reports, offering resolutions, voting, and other activities generally undertaken by a legislator during a legislative session related to business before the legislature. *Mesnard*, 251 Ariz. at 249 ¶ 15. Legislative immunity applies to legislators, legislative aides, and legislative contractors' "legislative activities." *Id.* at 248 ¶ 12. This immunity extends to legislative

contractors such as Cyber Ninjas. *See id.* ("When applicable, the doctrine prevents legislators, their aides, *and their contractors* from being criminally prosecuted or held civilly liable for their legislative activities." (Emphasis added.)); *Fields*, 206 Ariz. at 140 ¶ 30. Thus, legislative contractors' communications similarly can be subject to the legislative privilege. *See Fields*, 206 Ariz. at 134 ¶ 1. The case before us today involves only the Senate's internal communications, not communications with Cyber Ninjas.

¶15 Most states, including Arizona, have preserved common law legislative immunity in their respective constitutions. *Id.* at 137 ¶ 16; *Sanchez v. Coxon*, 175 Ariz. 93, 95 (1993) (recognizing the Arizona Constitution as a source of immunity for state legislators). The Arizona Constitution provides that "[n]o member of the legislature shall be liable in any civil or criminal prosecution for words spoken in debate." Ariz. Const. art. 4, pt. 2, § 7. Although the language of Arizona's Speech or Debate Clause differs slightly from its federal counterpart, our courts have held that cases construing the federal clause and the common law are persuasive in interpreting the scope of the immunity and privilege as embodied in the Arizona Constitution. *See, e.g., Fields*, 206 Ariz. at 137 ¶ 16 n.4.

## II.

¶16 We first address the court of appeals' conclusion that the Audit is not subject to legislative privilege because its protections pertain only to proposed or pending legislation. *See Fann II*, 252 Ariz. at 517 ¶ 30.

## A.

¶17 In holding that legislative privilege applies only to communications concerning proposed or pending legislation, the court overlooked a critical component of the *Gravel/Fields* framework—that the privilege applies to "other matters placed within the jurisdiction of the legislature." *Fields*, 206 Ariz. at 137 ¶ 18 (citing *Gravel*, 408 U.S. at 625). The *Gravel/Fields* framework makes clear that legislative privilege implicates two types of matters within the legislature's jurisdiction: (1) matters relating to proposed legislation *and* (2) other matters placed within the legislature's jurisdiction. *Gravel*, 408 U.S. at 625; *Fields*, 206 Ariz. at 137 ¶ 18; *accord Mesnard*, 251 Ariz. at 249 ¶ 15; *see also Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983) (proposing that activity other than pure speech or debate must (1) be an integral part of the deliberative and

communicative processes by which members participate in the legislative proceedings and (2) address proposed legislation *or* some other subject within the legislature's constitutional jurisdiction). Because the *Gravel/Fields* framework is posed in the disjunctive, it obviates a requirement for proposed or pending legislation if the legislative action involves other matters within the legislature's jurisdiction.

¶18 To be sure, a legislator's act does not warrant privilege merely because it is undertaken in an official capacity. *See Gravel*, 408 U.S. at 625. Privileged legislative acts bear the hallmarks of discretionary, policymaking choices that might have prospective implications, such as the creation of legislation, traditionally in areas where legislators have the power to act. *Fields*, 206 Ariz. at 138 ¶ 21 (citing *Bogan*, 523 U.S. at 55–56); *see also Mesnard*, 251 Ariz. at 249 ¶¶ 15–16. *Fields* is illustrative. There, the court of appeals deemed redistricting a privileged legislative activity because it entailed the exercise of discretionary, policymaking decisions within the constitutional framework to balance the goals of redistricting legislative districts and to devise a final plan. *Fields*, 206 Ariz. at 138 ¶ 22. *Fields* further clarified that "to the extent the legislative privilege protects against inquiry about a legislative act or communications about that act, the privilege also shields from disclosure documentation reflecting those acts or communications." *Id.* at 141 ¶ 32; *see also Miller*, 709 F.2d at 528 ("When members are acting within the 'legitimate legislative sphere,' the privilege is an 'absolute bar to interference.' Any questioning about legislative acts . . . would 'interfere' by having a chilling effect on Congressional freedom of speech." (internal citation omitted) (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975))).

¶19 Legislative investigation is often sufficient to invoke legislative privilege because such inquiries frequently precede formal legislative action. *See Eastland*, 421 U.S. at 504 ("[T]he power to investigate is inherent in the power to make laws because '(a) legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927))). Indeed, curtailment of the privilege's scope to communications concerning proposed or pending legislation would discourage wise or effective evaluation of the very necessity of legislation. *See id.* at 509 ("[T]he legitimacy of a congressional inquiry [is not] defined by what it produces. The very nature of the investigative function—like any research—is that it takes the searchers up

some 'blind alleys' and into nonproductive enterprises"; and therefore, "[t]o be a valid legislative inquiry[,] there need be no predictable end result.").

¶20 The fact that a legislator conducts an investigation, however, does not categorically render the matter within the scope of the "legislative process." *Steiger*, 112 Ariz. at 3. If the investigative topic concerns "a subject on which 'legislation could be had,'" *Eastland*, 421 U.S. at 506 (quoting *McGrain*, 273 U.S. at 177), it "is related to and in furtherance of a legitimate [legislative act]," *id.* at 505. If not, then the converse is true. *See* Restatement § 590 cmt. a ("[The privilege] extends to the work of legislative committees or sub-committees that are engaged in an investigation or other work authorized by the legislative body, whether the work is performed while that body is in session or during a recess."). For example, in *Steiger*, this Court held that a legislative investigation was not privileged because it concerned a pending civil action against a sitting congressman and his staff, which was not related to any legitimate legislative activities. *See* 112 Ariz. at 3–4. Thus, the legislative privilege did not shield the legislator's activities due to the personal, reputational, and political nature of the investigation that was devoid of any ties to the legislative process. Our focus on the political nature of the investigation in *Steiger* is inapplicable here because, unlike the investigation in *Steiger*, the Audit involves the legislative process.

**B.**

¶21 We hold that the Senate engaged in a privileged legislative act when it exercised its statutory and constitutional authority to investigate the 2020 general election. The legislature possesses the authority to enact substantive election laws. *See State v. Reed*, 248 Ariz. 72, 76 ¶ 10 (2020); *see also* Ariz. Const. art. 7, § 1 ("All elections by the people shall be by ballot, or by such other method as may be prescribed by law . . . ."). And although the Secretary of State administers elections in Arizona, the Supreme Court and this Court have recognized the state's interest in preserving the integrity of elections and the authority to enact laws to ensure that elections are fair and honest. *See Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *Arizonans for Second Chances, Rehab., & Pub. Safety v. Hobbs*, 249 Ariz. 396, 408–09 ¶ 41 (2020). The investigation into the accuracy of the 2020 election in Maricopa County was a function within the "legitimate legislative sphere" as any "other matter[] placed within the jurisdiction of the legislature." *Fields*, 206 Ariz. at 136 ¶ 15, 137 ¶ 18; *accord*

*Gravel*, 408 U.S. at 624–25; *see also Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2026, 2031–32 (2020). Our constitution grants the legislature the authority to enact laws regarding the conduct of elections, *see* Ariz. Const. art. 7, § 12, and to decide whether and to what extent the Maricopa County Board of Supervisors can conduct elections, *see id.* art. 12, § 4.

¶22 Our conclusion that the Senate's Audit was a privileged legislative act is bolstered by the Audit's statement of work, which established that Cyber Ninjas would recommend remedial measures to address any identified flaws in Arizona's elections system following the 2020 election. Of course, such recommendations could serve as a source for proposing legislative solutions for any identified issues. It is of no moment whether the Senate proposed an election reform bill *as a result of* the Audit. The legislative authority to investigate in contemplation of potential legislation concerning voter registration, election procedures, and election integrity, itself, is protected by legislative privilege. *See Eastland*, 421 U.S. at 506.

¶23 The Audit is a legislative activity within the legislature's authority, and communications concerning this activity are covered by legislative privilege. Consequently, the Senate's internal communications concerning the authorization, planning, and findings of the Audit investigation are privileged. *See Mesnard*, 251 Ariz. at 250 ¶ 21 (holding that a resulting "investigative report" was "an integral part of the deliberative and communicative processes" concerning a matter within the legislature's jurisdiction). American Oversight is not entitled to production of these communications that are purely legislative in nature.

## III.

¶24 We next address the court of appeals' conclusion that the Senate's communications were not covered by legislative privilege because the Audit was more administrative or political than legislative in nature. *See Fann II*, 252 Ariz. at 516–17 ¶¶ 26–27.

¶25 Administrative and political acts are beyond the scope of legitimate "legislative acts" and, thus, are not covered by legislative privilege. *Supra* ¶ 13. The hallmarks of an administrative act excluded from legislative privilege are well-established. In *Gravel*, the Supreme Court concluded that a legislator's communications with executive officials

and administrative agencies concerning administration of a federal statute is a non-privileged administrative activity. 408 U.S. at 625. In *Mesnard*, we recently opined that exhorting an executive agency to administer a law in a particular manner would constitute a non-privileged administrative matter. 251 Ariz. at 249 ¶ 16. Courts have also determined that decisions related to the legislative process that do not "themselves bear the 'hallmarks of traditional legislation by reflecting a discretionary, *policymaking* decision,'" *State ex rel. Montgomery v. Mathis*, 231 Ariz. 103, 123 ¶ 79 (App. 2012) (quoting *Fields*, 206 Ariz. at 138 ¶ 21)—such as whether to hire a consultant, how much to pay it, and whom to hire—are similarly classified as non-privileged administrative tasks, *id.* ¶ 80 (concluding that a decision was not legislative because there was no policy choice to be made, the action did not have the force of law, nor was there a prospective application). *See also Chateaubriand v. Gaspard*, 97 F.3d 1218, 1220–21 (9th Cir. 1996) (noting that courts generally consider employment and personnel decisions of legislators to be administrative acts). Finally, if the legislature enters into a contract—a legislative, policy-driven act—a legislator that complies with the terms of the agreement is acting outside of the legislative realm and instead acts in an administrative or executive function. *See Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984).

¶26 Political acts are also unprotected by legislative immunity or privilege. *Mesnard*, 251 Ariz. at 249 ¶ 16. Political acts include making speeches outside of the legislature, "performing tasks for constituents, sending newsletters, issuing news releases, and the like." *Id.*; *see United States v. Brewster*, 408 U.S. 501, 512 (1972) (discussing covered legislative activities and uncovered political activities); Restatement § 590 cmt. a ("The privilege does not protect a legislator who in private or public discussion outside of his legislative function explains his reasons for voting on past, pending or proposed legislation or who otherwise discusses the legislation, or who engages in other activities" that are "incidentally related to legislative affairs but not a part of the legislative process itself.").

¶27 Although we conclude that many of the Senate's Audit-related documents likely implicate legislative privilege, we reiterate several categorical exemptions that may compel disclosure of some of the Senate's withheld documents. Notably, the Senate concedes that it is not claiming privilege as to administrative or political communications. Thus, records of communications concerning the administration of the Audit—including payment, employment of consultants, and the like—are non-privileged

12

administrative functions. *See Mesnard*, 251 Ariz. at 249 ¶ 16; *Fields*, 206 Ariz. at 137 ¶ 18; *Gravel*, 408 U.S. at 625. Communications about the public reaction to the Audit and what information should be released to the public are political acts and are also not protected by legislative privilege, *Mesnard*, 251 Ariz. at 249 ¶ 16; *Fields*, 206 Ariz. at 137 ¶ 18, but, if made between Senate counsel and a senator or senate staff, could be protected by attorney-client privilege, *see* A.R.S. § 12-2234; *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 501–02 (1993). Additionally, certain non-substantive communications, such as e-mails between legislators arranging lunch to discuss the Audit, are not privileged.

¶28 A final point. The court of appeals reasoned that it was necessary to consider whether possible legislation was the "prime" purpose of the Audit. *Fann II,* 252 Ariz. at 516 ¶ 26. We disagree. Despite the unique politicization of the Audit, any purported political motive for the legislature's action in pursuing the Audit is irrelevant. *See Mesnard*, 251 Ariz. at 249–50 ¶ 18; *United States v. Johnson*, 383 U.S. 169, 180 (1966) (noting that inquiry into a motive for legislative function is "precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry"); *Tenney*, 341 U.S. at 377 ("The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty . . . ."). We consider actions, not motives. Our analysis rests on the legislative nature of, rather than the motive for, the Senate's Audit.

## IV.

¶29 We next consider whether a proponent of legislative privilege must prove indirect impairment of the legislative process. The court of appeals held that the Senate failed to meet its burden of establishing legislative privilege because it made no attempt to demonstrate that confidential treatment of the communications was necessary to prevent indirect impairment of legislative deliberations. *Fann II*, 252 Ariz. at 518 ¶ 32. We disagree.

¶30 The court misconstrued *Gravel* in requiring the Senate to prove an indirect impairment of legislative deliberations. In *Gravel*, although the Court broadened the scope of legislative privilege beyond pure speech or debate to cover matters that are "an integral part of the deliberative and communicative processes . . . with respect to other matters

which the Constitution places within the jurisdiction" of the legislature, 408 U.S. at 625, the purpose remained the same: to prevent the indirect impairment of legislative deliberations by intrusions into legislative acts. *See id. Gravel* did not require parties asserting legislative privilege to prove such impairment. Rather, *Gravel* merely explained that the prevention of indirect impairment is a feature of the legislative privilege by ensuring that legislators could engage in necessary legislative deliberations and decisions without fear of undue public scrutiny or interference.

**¶31** Our opinion in *Mesnard* accords with our conclusion that *Gravel* did not require an affirmative showing of indirect impairment of legislative deliberations. 251 Ariz. at 249 ¶ 15. Thus, evidence that Senators' communications concerned the Audit's authorization, planning, and findings—an investigation into a matter within the legislature's authority that could result in legislation—is sufficient to establish legislative privilege, even absent a showing of actual impairment. Legislative impairment is merely a guidepost to determine whether an act is legislative in nature; proving "indirect impairment" is not an additional requirement or finding under *Gravel/Fields*.

## V.

**¶32** Given the confusion regarding privilege logs apparent in the courts below, *see supra* ¶¶ 4–5, we now address the substantive and procedural issues concerning the Senate's privilege log and the discoverability of Audit-related documents and communications.

**¶33** As the party seeking to prevent disclosure of documents, the Senate "has the burden of overcoming 'the legal presumption favoring disclosure.'" *Scottsdale Unified Sch. Dist. No. 48 v. KPNX Broad. Co.*, 191 Ariz. 297, 300 ¶ 9 (1998) (quoting *Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14 (1993)). Arizona statutes outline the maintenance of public records and the process for withholding privileged or confidential documents. *See* A.R.S. § 39-121.01(D)(2). When documents are withheld, § 39-121.01(D)(2) requires "an index of records or categories of records that have been withheld and the reasons the records or categories of records have been withheld." This index should not include any information that is expressly privileged or confidential pursuant to statute or court order. *Id.* Although § 39-121.01 does not call this "index" a privilege log, the term commonly used in the courts, we conclude that the statutory language is

instructive in delineating the requirements of a privilege log in this context. Because the privilege log here is not being utilized in discovery, Arizona Rule of Civil Procedure 26(b) is not controlling, but we find it instructive. Rule 26(b)(6)(A)(i) provides that when a party claims a privilege or work-product protection and withholds information or documents in litigation, the party must identify in a privilege log the information or document(s) being withheld and describe the nature of the item "in a manner that—without revealing information that is itself privileged or protected—will enable other parties to assess the claim."

¶34        Although both § 39-121.01 and Rule 26(b) provide guidance for what a privilege log must include, a privilege log's descriptions must entail more than generalities. For example, the Senate described several communications broadly as relating to the planning, conduct, or results of the Audit, stating generally that withheld e-mails contained "internal legislative discussions concerning . . . the [A]udit." Because these descriptions are vague, the communications could include administrative and political matters. As discussed, *supra* ¶ 13, only communications about acts that are legislative in nature are protected by legislative privilege; communications involving administrative or political acts must be disclosed. Greater detail is required to mitigate the risk that the vague descriptions in privilege logs could defeat transparency in government activities as required by law. Consequently, privilege log entries must include specific assertions explaining *why* the document is purportedly privileged to the greatest extent possible without revealing its content or otherwise violating the privilege. The entries should adhere to Rule 26(b)(6)(A)(i) and sufficiently describe the communications to allow assessment of the privilege claim without revealing privileged or protected information.

¶35        We remand this case to the trial court to instruct the Senate to produce any communications that fall within the administrative, political, or other categories unprotected by legislative privilege.[2] On remand, if the Senate's privilege log descriptions adequately delineate legislative acts, the court must defer to these descriptions without conducting an in camera

---

[2]     In its supplemental brief, the Senate argued for the first time that it is entitled to a change of judge on remand pursuant to Arizona Rule of Civil Procedure 42.1(e). We did not accept review on this issue and decline to address it here.

review. If any privilege log entry lacks sufficient description to support the Senate's claim of legislative privilege, the court should afford the Senate a reasonable opportunity to revise its privilege log consistent with this opinion's guidance.

**¶36** If the Senate refuses or fails to provide sufficient specificity in its privilege log descriptions, it has not made a prima facie showing of the privilege, thereby triggering in camera review to determine if legislative privilege applies. If the Senate successfully makes a prima facie showing of privilege, American Oversight, as the party contesting the privilege, can challenge the privilege claim. *See Adleman*, 252 Ariz. at 361 ¶ 15. To succeed on its challenge, American Oversight would have to establish, on a good faith basis, that an in camera review of the communications would reveal that legislative privilege does not apply. *Id.*; *see also United States v. Zolin*, 491 U.S. 554, 572 (1989) (recognizing that there must be a factual basis adequate to support a good faith belief by a reasonable person that in camera review of materials may reveal evidence that the privilege does not apply).

## CONCLUSION

**¶37** The 2020 election remains a central focus of the political realm, a matter outside this Court's constitutional prerogative. Our decision today follows longstanding constitutional and common law precedent to preserve fundamental principles of the separation of powers and to guard our legislators' ability to discharge their constitutional duties without undue interference or impairment of their deliberative and communicative work as a legislative body. Arizona legislators routinely stand for election and, thus, are accountable to the state's electorate who serve as the ultimate arbiters of the wisdom of any legislative action, rather than the courts.

**¶38** For the foregoing reasons, we reverse the trial court's order that the Senate disclose all communications concerning the Audit to American Oversight. The *Gravel/Fields* framework requires that communications concerning legislative activities qualify for legislative privilege; communications need not relate to proposed or pending legislation nor require an affirmative showing of indirect impairment of legislative deliberations. But the Senate must disclose communications concerning administrative, political, or other non-legislative matters. We

vacate the court of appeals' opinion and remand to the trial court to resolve the Senate's legislative privilege claims consistent with the procedures and standards described in this opinion.