# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| ARTHUR WEST, | No. 60104-4-II |
| Appellant, | |
| v. | |
| THE WASHINGTON STATE LEGISLATURE, THE WASHINGTON STATE HOUSE OF REPRESENTATIVES, THE OFFICE OF THE CLERK BERNARD DEAN, THE OFFICES OF REP LAURIE JINKINS, LARRY SPRINGER, AMY WALEN, MY-LINH THAI, CINDY RYU, NOEL FRAME, DAVINA DUER, KIRSTEN HARRIS-TALLEY, BILL RAMOS, MONICA STONIER, LILLIAN ORTIS-SELF, MELANIE MORGAN, SHARON SANTOS, MIA GEGERSON, STEVE KIRBY, as agencies subject to the public records act, STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondents. | |

CRUSER, C.J.—Arthur West appeals the trial court's orders granting the legislature's motions for partial summary judgment. West contends that the legislature was not entitled to judgment as a matter of law because neither article II, section 17 of the Washington Constitution nor the constitutional separation of powers doctrine provides legislators with a privilege from disclosure of internal legislative deliberations that extends to the Public Records Act, ch. 42.56 RCW.

We conclude that both article II, section 17 of the Washington Constitution and the constitutional separation of powers provide legislators with a privilege from disclosure of legislative deliberations under the Public Records Act. Accordingly, we affirm.

FACTS

In January 2023, Arthur West submitted a public record request to the legislature asking for "Unredacted copies of all records withheld under a claim of legislative privilege" between January 1, 2022, and January 6, 2023. Clerk's Papers (CP) 3. The legislature timely responded to the request. Some legislators responded by producing redacted documents based on legislative privilege, other legislators chose to waive the privilege. West sued the legislature and individual legislators' offices arguing that they violated the Public Records Act (PRA) by asserting legislative privilege.

The trial court bifurcated the issues into two stages. The first stage concerned whether the Washington Constitution provides "a privilege against the disclosure of any records revealing internal legislative deliberations concerning bills contemplated or introduced in either house of the Legislature." *Id.* at 433. The second stage concerned whether the legislature's redactions were within the scope of the privilege, and, if not, what penalties apply. The parties filed cross motions for summary judgment on the first issue. The legislature argued that article II, section 17 of the Washington Constitution and the constitutional doctrine of separation of powers protect against the compelled disclosure of legislative deliberations. West asserted that no such privilege exists under Washington law.

The trial court granted the legislature's motion for partial summary judgment. The trial court found that both article II, section 17 of the Washington Constitution and the constitutional

doctrine of separation of powers independently provide "a privilege against the disclosure of any records revealing internal legislative deliberations concerning bills contemplated or introduced in either house of the Legislature." *Id.* at 188. The trial court further found that "[t]o the extent that records are protected by legislative privilege they are exempt from disclosure pursuant to the Public Records Act by RCW 42.56.070." *Id.* West filed a motion for reconsideration, which the trial court denied.

The legislature filed a second motion for summary judgment arguing that the legislature properly applied the legislative privilege by redacting the documents at issue. The trial court granted partial summary judgment to the legislature, finding that the records were properly redacted for legislative privilege except two sets of records not at issue in this appeal. The trial court entered a final judgment on the matter, awarding West $300 in costs based on the records not at issue here. West appeals both orders granting summary judgment, the order denying West's motion for reconsideration, the order denying penalties, and the final judgment.

ANALYSIS

West argues that the trial court erred in denying his motion for summary judgment and instead granting the legislature's motion for summary judgment because neither article II, section 17 of the Washington Constitution, nor the constitutional doctrine of separation of powers, provides a privilege from disclosure of internal legislative deliberations. We disagree.

I. STANDARD OF REVIEW AND LEGAL PRINCIPLES

We review a trial court's grant of summary judgment de novo. *Freedom Found. v. Gregoire*, 178 Wn.2d 686, 694, 310 P.3d 1252 (2013). Where there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Id.* West does not contend that a genuine issue of material fact exists here.

We review constitutional issues de novo. *Hanson v. Carmona*, 1 Wn.3d 362, 369, 525 P.3d 940 (2023). "The construction and interpretation of . . . provisions of the constitution is a judicial function." *State ex rel. O'Connell v. Slavin*, 75 Wn.2d 554, 557, 452 P.2d 943 (1969). We must give the words in the constitution their common and ordinary meaning. *Id.* We are tasked with interpreting constitutional language that is ambiguous, but interpretation is unnecessary where constitutional language is unambiguous. *Id.* "In determining the meaning of a constitutional provision, the intent of the framers, and the history of events and proceedings contemporaneous with its adoption may properly be considered." *Yelle v. Bishop*, 55 Wn.2d 286, 291, 347 P.2d 1081 (1959). Moreover, when interpreting our state constitution, we have held that federal case law interpreting federal constitutional provisions is persuasive, though not binding, precedent. *City of Seattle v. Mighty Movers, Inc.*, 152 Wn.2d 343, 353, 96 P.3d 979 (2004). And we may consider the reasoning of other state courts in interpreting identical or nearly identical provisions of their own constitutions as persuasive authority. *See State v. Coe*, 101 Wn.2d 364, 378, 679 P.2d 353 (1984).

Article II, section 17 of the Washington Constitution provides that "No member of the legislature shall be liable in any civil action or criminal prosecution whatever, for words spoken in debate." Similarly, article I, section 6 of the United States Constitution provides that Senators and Representatives "shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in

going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place."

The PRA was passed by citizen's initiative in 1972 to ensure governmental transparency in Washington State. *Freedom Found.*, 178 Wn.2d at 694. The PRA directs agencies, including the legislature, to allow public access to "all public records, unless the record falls within the specific exemptions of subsection (8) of this section, this chapter, or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1); *Associated Press v. Wash. State Legis.*, 194 Wn.2d 915, 921, 454 P.3d 93 (2019). The court liberally construes the PRA's provisions and narrowly construes its exemptions to preserve the PRA's broad mandate for disclosure. *Freedom Found.*, 178 Wn.2d at 695. Our supreme court has recognized that the PRA must give way to constitutional mandates. *Id.*; *see Wash. Pub. Emps. Ass'n v. Wash. State Ctr. for Childhood Deafness & Hearing Loss*, 194 Wn.2d 484, 506, 450 P.3d 601 (2019) (Holding constitutional privacy right incorporated into PRA via "other statutes" exception to disclosure requirement).

## II. ARTICLE II, SECTION 17

Article II, section 17 of the Washington Constitution contains a speech or debate clause. It states, "No member of the legislature shall be liable in any civil action or criminal prosecution whatever, for words spoken in debate." *Id.* West contends that the speech or debate clause does not provide a privilege against the disclosure of records revealing internal legislative deliberations because the records do not fall within the definition of speech or debate. We disagree.

West begins by focusing on the textual differences between the Washington constitution's speech or debate clause and the federal constitution's speech or debate clause. West notes that

whereas the federal constitution states that senators and representatives are protected from questioning about their speech or debate while they are "in any other place," the Washington constitution contains no such language. Br. of Appellant at 22. But here, the issue is whether the word "debate" encompasses more than words spoken on the floor of the house or senate. The term "debate" is identical in both constitutions. Moreover, "Despite considerable textual variation" between the federal and state constitutional provisions, "the nature of the privilege is relatively consistent." J. Pierce Lamberson, *Drawing the Line on Legislative Privilege: Interpreting State Speech or Debate Clauses in Redistricting Litigation*, 95 Wash. U. L. Rev. 203, 208-09 (2017).

West further contends that the phrase "words spoken in debate" refers only to words publicly spoken on the floor of the house or senate, and therefore limits the legislative immunity contemplated by article II, section 17 to liability, not non-disclosure. Br. of Appellant at 34. We conclude that the plain language of the Washington Constitution is ambiguous with regard to what conduct falls within the meaning of "words spoken in debate" and whether article II, section 17's immunity from liability creates a legislative privilege from disclosure under the PRA of records divulging internal legislative deliberations. Accordingly, we look to the intent of the framers, and the history of the events and proceedings contemporaneous with the clauses' adoption for guidance. *Yelle*, 55 Wn.2d at 291.

West argues that an interpretation of article II, section 17 that recognizes not only immunity from liability but a privilege from disclosure that extends to requests under the PRA is contrary to the framer's intent because, according to West, the framers drafted the constitution at a time of heightened populist sentiment and distrust of the legislature. The legislature responds that the history and text of article II, section 17 indicate that the framers intended to create a legislative

privilege from disclosure so that the legislature could more effectively effectuate the will of the people. We agree with the legislature.

A legislative privilege from liability for speech and debate emerged in Parliament in the sixteenth century to preserve legislative independence from the crown. Steven F. Huefner, *The Neglected Value of the Legislative Privilege in State Legislatures*, 45 Wm. & Mary L. Rev. 221, 230-31 (2003). The inclusion of a legislative privilege in the 1689 English Bill of Rights reflected " 'the conflict between two ancient and undoubted rights, on the one hand prerogative of the king . . . , and on the other the privileges of the people exercised through their representatives.' " *Id.* at 230 (internal quotation marks omitted) (quoting Mary Patterson Clarke, *Parliamentary Privilege in the American Colonies* 10 (1943). The speech or debate clause of the federal constitution and corresponding provisions of many state constitutions trace their lineage back to these parliamentary origins. *Id.* at 231-32. In this way, legislative privilege reflects, rather than contradicts, the populist sentiments of the framers, serving as " 'one of the chief means of upholding and preserving the liberty of the subject.' " *Id.* at 230 (quoting Clarke, supra, at 10).

Prior to Washington's adoption of article II, section 17, other states and the United States Supreme Court interpreted their speech or debate clauses to encompass conduct other than pure speech or debate. As early as 1808, the Supreme Court of Massachusetts interpreted a state constitutional provision that stated, "[t]he freedom of deliberation, speech, and debate in either house of the legislature, is so essential to the rights of the people, that it cannot be the foundation of any accusation or prosecution, action or complaint, in any other court or place whatsoever." *Coffin v. Coffin*, 4 Mass. 1, 26 (1808) (quoting MASS. CONST. Pt. 1, art. XXI). In holding that this provision protected a representative in an action for slander where the representative made an

offensive remark on the floor of the house of representatives that related to a matter before the legislature but did not make the remark while addressing the chair, the Chief Justice reasoned:

> These privileges are thus secured, not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal. I therefore think that the article ought not to be construed strictly, but liberally, that the full design of it may be answered. I will not confine it to delivering an opinion, uttering a speech, or haranguing in debate; but will extend it to the giving of a vote, to the making of a written report, and to every other act resulting from the nature, and in the execution, of the office; and I would define the article as securing to every member exemption from prosecution, for everything said or done by him, as a representative, in the exercise of the functions of that office, without inquiring whether the exercise was regular according to the rules of the house, or irregular and against their rules. I do not confine the member to his place in the house; and I am satisfied that there are cases in which he is entitled to this privilege, when not within the walls of the representatives' chamber.

*Id.* at 27.

In 1880, with reference to the expansive, and in its view "authoritative," construction of "speech and debate" articulated in *Coffin*, the United States Supreme Court held that the term as used in article I, section 6 of the federal constitution encompasses certain written communications by legislators. *Kilbourn v. Thompson*, 103 U.S. 168, 204, 26 L. Ed. 377 (1880). The Court concluded

> The reason of the rule is as forcible in its application to written reports presented in that body by its committees, to resolutions offered, which, though in writing, must be reproduced in speech, and to the act of voting, whether it is done vocally or by passing between the tellers. In short, to things generally done in a session of the House by one of its members in relation to the business before it.

*Id.*

Against this backdrop, Washington's article II, section 17 was adopted from the Wisconsin Constitution "without controversy." Robert F. Utter & Hugh D. Spitzer, THE WASHINGTON CONSTITUTION: A REFERENCE GUIDE 72 (2d ed. 2013). It is therefore reasonable to infer that the

framers intended to adopt the prevailing view of the term "debate." While no Washington court has yet interpreted this language, Wisconsin and other courts interpreting language identical to article II, section 17 have concluded that the legislative privilege extends beyond pure speech or debate in the legislature to matters that are an "integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation" or other matters within the jurisdiction of the legislature. *Gravel v. United States*, 408 U.S. 606, 625, 92 S. Ct. 2614, 33 L. Ed. 2d 583 (1972); *Fann v. Kemp in and for Cnty. of Maricopa*, 253 Ariz. 537, 542-43, 515 P.3d 1275 (2022); *Ariz. Indep. Redistricting Com'n v. Fields*, 206 Ariz. 130, 137, 75 P.3d 1088 (2003); *State v. Beno*, 116 Wis. 2d 122, 142-43, 341 N.W.2d 668 (1984). Indeed, jurisdictions take an expansive view of "speech or debate" regardless of the language used. *E.g.*, *Coffin*, 4 Mass. 27; *Kilbourn*, 103 U.S. at 204; *Kraus v. Ky. State Senate*, 872 S.W.2d 433, 440 (1993) (speech or debate clause extends to voting on executive appointments); *Romer v. Colo. Gen. Assembly*, 810 P.2d 215, 225 (1991) (speech or debate clause applies when assembly "is engaged in legitimate legislative activity); *Holmes v. Farmer*, 475 A.2d 976, 983 (1984) ("the speech in debate clause limits judicial inquiry into words or actions that are clearly a part of the legislative process."); *Cotton v. Banks*, 310 Mich. App. 104, 117, 872 N.W.2d 1 (2015) (protection extends beyond pure speech and debate when necessary to prevent impairment of deliberations); *League of Women Voters of Pa. v. Commonwealth*, 177 A.3d 1000, 1003 (2017) (clauses protections "extend to 'fact-finding, information gathering, and investigative activities,' which 'are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation.' " (quoting *Gov't of the V.I. v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985)).

And jurisdictions interpreting language identical to article II, section 17 have concluded this language not only protects legislators from liability, but also "functions as a testimonial and evidentiary privilege." *Ariz. Indep. Redistricting Com'n*, 206 Ariz. at 137; *see Beno*, 116 Wis. 2d at 142. These courts reasoned that the rights of the people are best supported when legislators can execute the functions of their office without fear of prosecution and the burden of defending themselves. *Ariz. Indep. Redistricting Com'n*, 206 Ariz. at 137. We find this reasoning compelling and conclude that article II, section 17 of the Washington Constitution not only provides legislators with immunity from liability for "words spoken in debate," but also functions as a testimonial and evidentiary privilege for internal communications or records that extends to matters integral to the legislative process.[1]

Moreover, we conclude that because these objectives are implicated when a legislator is compelled to produce documents, article II, section 17 provides an exemption from disclosure under the PRA. Compelled production of documents, whether to a requestor under the PRA, or to a litigant in a lawsuit, or to a court, might "chill the ardor of a member to speak and act freely in the performance of legislative functions." *Beno*, 116 Wis. 2d at 142. Therefore article II, section 17 must protect legislators from compelled disclosure of legislative deliberations so that they may exercise their duties independent of the influence of the other branches of government as the framers intended. The fact that these objectives may at times conflict with the purposes of the PRA

---

[1] We recognize that courts in at least one state have addressed whether the legislative privilege extends to communications with and records involving contractors or consultants who are hired to assist a legislator or legislative entity to perform their core functions. *See Fann*, 253 Ariz. at 543. This issue is not before us in this case, nor is there any claim here that communications and records that are not internal are protected by the legislative privilege.

does not affect our analysis. "[T]he PRA must give way to constitutional mandates." *Freedom Found.* 178 Wn.2d at 695.

West argues that 9th circuit precedent, *U.S. v. Renzi*, 651 F.3d 1012 (9th Cir. 2011), recognizes that legislative privilege is only a "use privilege," not a non-disclosure privilege. Br. of Appellant at 51. However, *Renzi* did not concern the existence of a legislative privilege, but was instead concerned with whether the legislative privilege applied to the particular conduct and communications at issue. *Renzi*, 651 F.3d at 1020. *Renzi* merely acknowledges that solicitation of a bribe by a member of Congress is not a legislative act and is therefore outside the scope of the legislative privilege. *Id.* at 1030-31.

Finally, West expresses concern that if this court were to recognize legislative privilege, public access to legislative records would depend "solely on the arbitrary and capricious whims of the Legislature." Br. of Appellant at 72. This is not so. In light of the purposes of article II, section 17 articulated above, legislative privilege "exists only to the extent necessary for the adequate functioning of the state legislative body." *Beno*, 116 Wis.2d at 142; *see Ariz. Indep. Redistricting Com'n*, 206 Ariz. at 137 (explaining that legislative privilege is limited to matters that are " 'an integral part of the deliberative and communicative processes' relating to proposed legislation or other matters placed within the jurisdiction of the legislature" (quoting *Gravel*, 408 U.S. at 625). The legislature here does not seek to protect from disclosure communications and records that involve someone external to the legislature. Furthermore, we need not address in detail the scope of the legislative privilege because West does not challenge the trial court's application of the legislative privilege to any of the records at issue in this matter.

III. SEPARATION OF POWERS

West argues that the separation of powers doctrine does not necessitate a legislative privilege from disclosure and that, to the contrary, the separation of powers doctrine, as our supreme court held in *Associated Press*, requires the judiciary to strictly adhere "to the [PRA's] unambiguous language to ensure the judiciary carries out the Legislature's will." Br. of Appellant at 72. Stated differently, West argues that our supreme court's holding in *Associated Press* precluded the trial court from recognizing a constitutional privilege exempting certain legislative communications from compelled disclosure under the PRA because to do so would itself violate the separation of powers. We disagree.

Separation of powers is one of the "cardinal and fundamental principles" of our state constitutional system. *Wash. State Motorcycle Dealers Ass'n v. State*, 111 Wn.2d 667, 674, 763 P.2d 442 (1988). Our separation of powers jurisprudence protects institutional interests and guards the balance of powers between branches. *Freedom Found.*, 178 Wn.2d at 696. "[W]e test for separation of powers violations by asking 'whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.' " *Id.* (internal quotation omitted) (quoting *Brown v. Owen*, 165 Wn.2d 706, 718, 206 P.3d 310 (2009)). "[W]e apply the doctrine by protecting the branches themselves." *Id.* at 699.

West's reliance on *Associated Press* is misplaced. That case involved an issue of statutory interpretation, not of constitutional interpretation. While the trial court in *Associated Press* properly observed that separation of powers principles necessitate deference to the legislature when the judiciary interprets a statute, "[t]he construction and interpretation of . . . provisions of the constitution is a judicial function." *O'Connell*, 75 Wn.2d at 557.

In *Associated Press*, our supreme court did not address the existence of a constitutional privilege from disclosure, instead it held that individual legislators are "agencies" subject to the PRA's general disclosure mandate. 194 Wn.2d at 922. While legislators are subject to the PRA's disclosure requirements under the PRA's terms, "the PRA must give way to constitutional mandates." *Freedom Found.*, 178 Wn.2d at 695. Therefore, our supreme court's holding in *Associated Press* did not preclude the trial court from recognizing a constitutional privilege from disclosure. West's argument that by declining to amend the PRA to include an exemption for legislative communications, the legislature waived its ability to argue that its non-disclosure was justified by a constitutionally derived legislative privilege likewise fails. Legislative enactments cannot amend or alter constitutional provisions. See *id.* The trial court did not exceed its judicial power by holding that the speech or debate clause applies.

We conclude that even if article II, section 17 of our constitution does not provide a legislative privilege from disclosure, the constitutional doctrine of separation of powers does. As discussed above, compulsory disclosure of internal legislative deliberations under the PRA threatens the independence and integrity of the legislature. Legislators must be free to deliberate candidly with each other and without the burden of defending themselves in court. Our decision to recognize a legislative privilege from disclosure rooted in the constitutional separation of powers doctrine comports with the decisions of our sister states. *See Beno*, 116 Wis. 2d at 141; *see also Ariz. Indep. Redistricting Com'n*, 206 Ariz. at 136; *see also League of Women Voters of Fla. v. Fla. House of Representatives*, 132 So. 3d 135, 145-46, 38 Fla. L. Weekly S895 (Fla. 2013) (holding that separation of powers creates a legislative privilege from disclosure in absence of speech or debate clause). Accordingly, the separation of powers doctrine creates a legislative

No. 60104-4-II

privilege that protects certain communications from disclosure under the PRA. *See* RCW 42.56.070(1); *see also Freedom Found.*, 178 Wn.2d at 695.

CONCLUSION

We conclude that the trial court did not err in granting the legislature's motions for summary judgment because both article II, section 17 of the Washington Constitution and the constitutional separation of powers doctrine provide a privilege from disclosure of internal legislative deliberations. Accordingly, we affirm trial court's orders denying West's motion for summary judgment and granting the legislature's motion for summary judgment, and judgment in favor of the legislature.

_____
CRUSER, C.J.

I concur:

_____
CHE, J.

MAXA, J. (concurring in part) – I agree that the separation of powers doctrine, as interpreted by the Supreme Court in *Freedom Foundation v. Gregoire*, 178 Wn.2d 686, 310 P.3d 1252 (2013), creates a legislative privilege that allows legislators to refuse to produce records requested under the Public Records Act, chapter 42.56 RCW (PRA) that involve internal legislative deliberations. However, I disagree that article II, section 17 of the Washington Constitution creates such a legislative privilege.

Article II, section 17 states, "No member of the legislature shall be liable in any civil action or criminal prosecution whatever, for words spoken in debate." The lead opinion completely ignores a crucial provision of article II, section 17: that a legislator cannot be "liable in any civil action." The proper question here is whether a PRA request subjects a legislator to liability in a civil action.

A.      PLAIN LANGUAGE ANALYSIS

The current version of *Black's Law Dictionary* defines "liable" as "[r]esponsible or answerable in law; legally obligated" and "[s]ubject to or likely to incur a fine, penalty, etc." BLACK'S LAW DICTIONARY at 1097 (12th ed. 2024) (hereinafter BLACK'S 2024). *Black's* defines "liability" as "[t]he quality, state, or condition of being legally obligated or accountable" and "legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." *Id.* at 1095. *Black's* defines "civil action" as "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation." *Id.* at 38. *Black's* defines "litigation" as "[t]he process of carrying on a lawsuit." *Id.* at 1117.

In 1889 – when the Washington Constitution was adopted – one legal dictionary defined "liable" as "[b]ound, bound for, obligated; responsible, answerable, accountable, chargeable

with: as, liable for money." William C. Anderson, *A Dictionary of Law* at 616 (T.H. Flood & Co. ed. 1889). The same dictionary also defined "liability" as "[t]he state of being bound or obliged in law or justice. That condition of affairs which gives rise to an obligation to do a particular thing to be enforced by action." *Id.* *Black's Law Dictionary* from this period defined "liable" as "[b]ound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation or restitution" and "[e]xposed or subject to a given contingency, risk, or casualty, which is more or less probable." BLACK'S LAW DICTIONARY at 713 (1891) (hereinafter BLACK'S 1891).

Founding era dictionaries also provide relevant definitions for "civil" and "action". The 1889 dictionary defines "action" as "an abstract legal right in one person to prosecute another in a court of justice; a 'suit' is the actual prosecution of that right." *A Dictionary of Law* at 25. The same dictionary defines "civil" as "[c]oncerning the rights of and wrongs to individuals considered as private persons, in contradistinction to *criminal* or that which concerns the whole political society." *Id.* at 185. Another dictionary defined "action" as "a proceeding taken in a court of law," and defined "civil remedy" as "one that may be enforced by a private person for a tort, as opposed to indictment and public prosecution." William C. Cochran, *Students' Law Lexicon, A Dictionary of Legal Words and Phrases* at 8, 58. *Black's Law Dictionary* from the period defined "civil action" as those that "lie in behalf of persons to enforce their rights or obtain redress of wrongs in their relation to individuals." BLACK'S 1891 at 27. *Black's* from this era also defines "action" as "[t]he legal and formal demand of one's right from another person or party made and insisted on in a court of justice." *Id.*

Under these definitions of "liable," legislators who receive a public record request under the PRA are subject to liability. They are answerable in law and legally obligated to respond to the request and are subject to a fine or penalty if they refuse to respond.

However, a PRA request itself – before the commencement of any legal action in the courts – does not qualify as a civil action. According to *Black's* from both the founding era and today, an action involves litigation – a lawsuit. BLACK'S 2024 at 38, 1117; BLACK'S 1891 at 27. A PRA request is not a lawsuit. Therefore, although a legislator may be legally obligated to respond to a PRA request, there is no liability "in a civil action" in responding to a public record request as a general matter.

It could be argued that if a legislator refuses to produce any records or redacts portions of the records produced, that legislator ultimately could be subject to liability in a civil action – a PRA lawsuit. But article II, section 17 prohibits liability in a civil action "*for* words spoken in debate." (Emphasis added). In a PRA action, the legislator would be subject to liability for "den[ying] an opportunity to inspect or copy a public record," RCW 42.56.550(1), not for words spoken in debate.

Under the plain language analysis, I conclude that article II, section 17 does not provide a legislative privilege against disclosure of records in response to a request under the PRA.

B.     POTENTIALLY APPLICABLE CASES

The lead opinion cites to federal cases interpreting article I, section 6, clause 1 of the United States Constitution, which provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." However, that provision does not require a "civil action." Instead, members of Congress cannot be "questioned

17

in any other place." In addition, the federal cases do not address public record requests because the federal Freedom of Information Act does not apply to Congress. 5 U.S.C. § 551(1)(A). Therefore, the federal cases are not helpful.

The lead opinion relies on *State v. Beno*, 116 Wis.2d 122, 341 N.W.2d 668 (1984). In *Beno*, the defendant issued a subpoena to a Wisconsin legislator's administrative assistant to attend a deposition. *Id.* at 128. Interpreting a constitutional provision identical to article II, section 17 of the Washington Constitution, the Wisconsin Supreme Court stated, "[T]he words 'liable in any civil action' could be interpreted to mean answerable as a party to a civil action or *answerable to obey a court process such as a subpoena*, whether or not the legislator is a party to the civil action." *Id.* at 140 (emphasis added). The court concluded that the Wisconsin Constitution protected legislators "from questioning in a judicial proceeding." *Id.* at 142.

*Beno* clearly involved a "civil action" – the administrative assistant was subpoenaed to testify in ongoing litigation. Therefore, that case is not helpful in determining whether a PRA request constitutes a civil action. I acknowledge that article II, section 17 likely provides a legislative privilege regarding deposition or trial subpoenas.

The lead opinion also relies on two Arizona cases, *Arizona Independent Redistricting Commission v. Fields*, 206 Ariz. 130, 75 P.3d 1088 (Ct. App. 2003) and *Fann v. Kemp*, 253 Ariz. 537, 515 P.3d 1275 (2022).

In *Fields*, several parties filed a lawsuit against a redistricting commission created by the Arizona Constitution. 206 Ariz. at 134. The parties sought to depose commission members and their consultants and to obtain responses to written discovery requests, and later requested additional documents. *Id.* at 135. The Arizona Court of Appeals recognized a legislative

privilege that had roots in the common law, the speech or debate clause of the United States

Constitution, and principles underlying the separation of powers. *Id.* at 136. The court also

noted that the privilege was embodied in the Arzona Constitution in a provision identical to

article II, section 17 of the Washington Constitution. *Id.* at 137 n.3. However, as in *Beno*, *Fields*

clearly involved a "civil action." The plaintiffs filed a lawsuit against the commission, and

sought depositions and records in the context of that lawsuit. Therefore, that case is not helpful

in determining whether a PRA request constitutes a civil action.

In *Fann*, a party submitted a public records request for documents relating to an audit of

votes cast in the November 2020 election. 253 Ariz. at 540. The Arizona Supreme Court

recognized the existence of a legislative privilege arising from the common law, the speech and

debate clause, and separation of powers. *Id.* at 542-43. But the court did not explain – or even

address – how a public record request could constitute a "civil action" under the Arizona

Constitution.

The Legislature cites to a number of other state court cases. But none of those cases

address whether a public record request subjects a legislator to liability in a "civil action" under

language similar to article II, section 17. *See*, *e.g.*, *Smith v. Iowa District Court for Polk County*,

3 N.W.3d 524, 532-35 (2024) (finding a legislative privilege despite the absence of a

constitutional provision similar to article II, section 17 or the federal speech or debate clause);

*Edwards v. Vesilind*, 292 Va. 510, 790 S.E.2d 469 (2016) (finding a legislative privilege under a

constitutional provision similar to the federal speech or debate clause; no requirement of a "civil

action"); *State of Oregon v. Babson*, 355 Or. 383, 417-23, 326 P.3d 559 (2014) (finding a

legislative privilege under a constitutional provision similar to the federal speech or debate clause; no requirement of a "civil action").

C.      CONCLUSION

Article II, section 17 clearly and unambiguously states that a legislator cannot be "liable in any civil action."  No case in any other jurisdiction has addressed whether a public record request constitutes a "civil action" under a constitutional provision similar to article II, section 17.  In the absence of any authority, I would apply the plain language of article II, section 17 and hold that this provision does not apply to record requests under the PRA.



MAXA, J.